OPINION
{¶ 1} Defendant-appellant Phillip L. Elmore appeals from the November 9, 2004 and February 18, 2005, Judgment Entries of the Licking County Court of Common Pleas overruling his Petition for Post Conviction Relief and granting the plaintiff-appellee State of Ohio's motion for summary judgment.
 STATEMENT OF FACTS IN THE CASE {¶ 2} In June, 2002, a Licking County Grand Jury returned a six-count indictment against appellant charging him with aggravated murder, murder, kidnapping, aggravated robbery, aggravated burglary and grand theft.
 {¶ 3} The aggravated murder count in the indictment contained four separate death penalty specifications enumerated in R.C. 2929.04(A)(3) and 2929.04 (A)(7).
 {¶ 4} The trial of this case arose from the tragic death of Pamela S. Annarino, whose body was found on June 4, 2002, in the upstairs bathroom of her home located at 32 West Postal Avenue. The body was found by two men, Clifton Rodeniser, the victim's brother-in-law, and close friend Timothy Grooms. According to the Coroner, the victim died of "multiple blunt force injuries to the head with incomplete ligature strangulation." (5T at 845-847). Ms. Annarino and appellant had previously had a romantic relationship.
 {¶ 5} A jury trial was held in which the State introduced substantial evidence against appellant including several statements made to law enforcement officials which implicated him in Pamela Annarino's death. After the State rested, the defense likewise rested without calling any witnesses.
 {¶ 6} The jury returned verdicts of guilty of all counts as well as all four capital specifications. The case then proceeded to the penalty phase. Appellant made an unsworn statement. Thereafter the defense called its only witness, Dr. Jeffrey Smalldon, a clinical psychologist. The defense then rested. The State presented no rebuttal evidence. The jury returned a verdict recommending that appellant be sentenced to death. The trial court accepted the jury's recommendation and sentenced appellant to death. Appellant appealed his conviction and sentences to the Ohio Supreme Court. (See State v. Elmore 103 Ohio St. 3d 1423, 814 N.E. 2d 488,2004-Ohio-4524). Neither party has sought a stay of the direct appeal in the Ohio Supreme Court or in the appeal from the denial of the petition for post conviction relief in this court. (See, e.g. State v. Glenn
(1987), 33 Ohio St.3d 601, 514 N.E.2d 869).
 {¶ 7} Appellant filed his petition for post-conviction relief on August 26, 2004. The petition raised seventeen grounds for relief supported by 50 exhibits numbering 673 pages in length. On September 30, 2004, appellant amended his petition for post-conviction relief by adding two additional grounds for relief and two additional exhibits. On that same date, appellant filed his first motion for leave of court to conduct discovery.
 {¶ 8} On October 11, 2004, the appellee filed its motion for summary judgment. On October 12, 2004, appellant moved the trial court for appointment of an expert on substance dependence and an expert in mental retardation. The trial court denied both of these motions on November 11, 2004.
 {¶ 9} On October 25, 2004 the appellant filed his memoranda contra to appellee's motion for summary judgment which was supported by three exhibits. On November 9, 2004 the trial court granted the appellee's motion for summary judgment. On February 18, 2005, the trial court entered Findings of Fact and Conclusions of Law. Appellant timely appealed and raises the following assignment of error for our consideration:
 {¶ 10} "I. THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S POSTC-ONVICTION PETITION WHERE HE PRESENTED SUFFICIENT OPERATIVE FACTS TO MERIT A NEW TRIAL AND SENTENCING HEARING OR, ALTERNATIVELY, AN EVIDENTIARY HEARING AND DISCOVERY."
 Standard of Review {¶ 11} R.C. 2953.21(A) states, in part, as follows: "(1) Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief".
 {¶ 12} A post conviction proceeding is a collateral civil attack on a criminal conviction. State v. Calhoun (1999), 86 Ohio St.3d 279, 281,714 N.E.2d 905; State v. Phillips, 9th Dist. No. 20692, 2002-Ohio-823. In order to obtain post conviction relief, a petitioner must show that "there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States [.]" R.C. 2953.21; State v. Watson
(1998), 126 Ohio App.3d 316, 323, 710 N.E.2d 340.
 {¶ 13} Under R.C. 2953.21, a petitioner seeking post conviction relief is not automatically entitled to an evidentiary hearing. Calhoun,86 Ohio St.3d at 282, 714 N.E.2d 905. Significantly, the Ohio Supreme Court has held that the proper basis for dismissing a petition for post conviction relief without holding an evidentiary hearing include: 1) the failure of the petitioner to set forth sufficient operative facts to establish substantive grounds for relief, and 2) the operation of resjudicata to bar the constitutional claims raised in the petition.Calhoun, 86 Ohio St.3d at paragraph two of the syllabus; State v. Lentz
(1994), 70 Ohio St.3d 527, 530, 639 N.E.2d 784.
 {¶ 14} In order for an indigent petitioner to be entitled to an evidentiary hearing in a post conviction relief proceeding on a claim that he was denied effective assistance of counsel, the two-partStrickland v. Washington (1984), 466 U.S. 668 is to be applied. Hill v.Lockhart (1985), 474 U.S. 52, 58; State v. Lylte (1976),48 Ohio St. 2d 391; State v. Bradley (1989), 42 Ohio St. 3d 136; Statev. Cole, supra, 2 Ohio St. 3d at 114. The petitioner must therefore prove that: 1). counsel's performance fell below an objective standard of reasonable representation; and 2). there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Id.
 {¶ 15} R.C. 2953.21 does not expressly mandate a hearing for every post-conviction relief petition; therefore, a hearing is not automatically required. In determining whether a hearing is required, the Ohio Supreme Court in State v. Jackson (1980), 64 Ohio St.2d 107, stated the pivotal concern is whether there are substantive grounds for relief which would warrant a hearing based upon the petition, the supporting affidavits, and the files and records of the case.
 {¶ 16} As the Supreme Court further explained in Jackson, supra, "[b]road assertions without a further demonstration of prejudice do not warrant a hearing for all post-conviction relief petitions." Id. at 111. Rather, a petitioner must submit evidentiary documents containing sufficient operative facts to support his claim before an evidentiary hearing will be granted. Accordingly, "a trial court properly denies a defendant's petition for post conviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." Calhoun, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).
 {¶ 17} Furthermore, before a hearing is granted in proceedings for post conviction relief upon a claim of ineffective assistance of trial counsel, the petitioner bears the initial burden to submit evidentiary material containing sufficient operative facts that demonstrate a substantial violation of any of defense counsel's essential duties to his client and prejudice arising from counsel's ineffectiveness. Calhoun,86 Ohio St.3d at 289, 714 N.E.2d 905; State v. Jackson (1980),64 Ohio St.2d 107, 413 N.E.2d 819, syllabus; see, also Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, 693;State v. Phillips, supra.
 {¶ 18} "In determining how to assess the credibility of supporting affidavits in post conviction relief proceedings, the Supreme Court adopted the reasoning of the First Appellate District in State v. Moore
(1994), 99 Ohio App.3d 748, 651 N.E.2d 1319, which had looked to federal habeas corpus decisions for guidance. Id. at 753-754,651 N.E.2d at 1322-1323. The Supreme Court ultimately determined that the trial court should consider all relevant factors in assessing the credibility of affidavit testimony in `so-called paper hearings,' including the following: `(1) whether the judge viewing the post conviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony.' Calhoun, 86 Ohio St.3d at 285,714 N.E.2d at 911-912, citing Moore, 99 Ohio App.3d at 754-756,651 N.E.2d at 1323-1324." State v. Kinley (1999), 136 Ohio App.3d 1,13-14, 735 N.E.2d 921, 930-31.
 {¶ 19} A trial court that discounts the credibility of sworn affidavits must include an explanation of its basis for doing so in its findings of fact and conclusions of law in order that meaningful appellate review may occur. Id. at 285, 714 N.E.2d at 911-912.
 {¶ 20} Another proper basis upon which to deny a petition for post conviction relief without holding an evidentiary hearing is resjudicata. Lentz, 70 Ohio St.3d at 530; State v. Phillips, supra.
 {¶ 21} Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment. Statev. Szefcyk (1996), 77 Ohio St.3d 93, 671 N.E.2d 233, syllabus, approving and following State v. Perry (1967), 10 Ohio St.2d 175, 226 N.E.2d 104, paragraph nine of the syllabus. It is well-settled that, "pursuant to resjudicata, a defendant cannot raise an issue in a [petition] for post conviction relief if he or she could have raised the issue on direct appeal." State v. Reynolds (1997), 79 Ohio St.3d 158, 161, 679 N.E.2d 1131. Accordingly, "[t]o survive preclusion by res judicata, a petitioner must produce new evidence that would render the judgment void or voidable and must also show that he could not have appealed the claim based upon information contained in the original record." State v. Nemchik (Mar. 8, 2000), Lorain App. No. 98CA007279, unreported, at 3; see, also, State v.Ferko (Oct. 3, 2001), Summit App. No. 20608, unreported, at 5; State v.Phillips, supra.
 {¶ 22} Similarly, regarding claims of ineffective assistance of trial counsel in post conviction proceedings, the Ohio Supreme Court has stated that where a defendant, represented by different counsel on direct appeal, "fails to raise [in the direct appeal] the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence dehors the record, res judicata is a proper basis for dismissing defendant's petition for post conviction relief." State v.Cole (1982), 2 Ohio St.3d 112, 443 N.E.2d 169, syllabus; see, also,Lentz, 70 Ohio St.3d at 530, 639 N.E.2d 784; State v. Phillips, supra.
 {¶ 23} In State v. Phillips, supra, the court noted "[s]ignificantly, evidence outside the record alone will not guarantee the right to an evidentiary hearing. State v. Combs (1994), 100 Ohio App.3d 90, 97,652 N.E.2d 205. Such evidence "`must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of [Statev. Perry (1967), 10 Ohio St.2d 175] by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery.' "(Citation omitted.) State v. Lawson (1995),103 Ohio App.3d 307, 315, 659 N.E.2d 362. Thus, the evidence must not be merely cumulative of or alternative to evidence presented at trial.Combs, 100 Ohio App.3d at 98, 652 N.E.2d 205".
 Right to Conduct Discovery {¶ 24} In his appeal, although not expressly stated as an assignment of error, appellant contends that he was entitled to conduct discovery prior to the trial court ruling upon the State's motion for summary judgment. We disagree.
 {¶ 25} Appellant is represented in this appeal by the same attorneys who had represented him in the trial court on his petition for post conviction relief. In opposing a motion by the State to compel the testimony of appellant's trial attorneys, appellant's counsel correctly cited the law on this issue: "[t]here is no provision for conducting discovery in the post-conviction process. State ex Rel. Love v. CuyahogaCounty Prosecutor's Office, 86 Ohio St.3d 279, 281 (1999). The power to conduct and compel discovery in post-conviction is not included within a trial court's statutorily defined authority. State v. Sherman, 2000 WL 1634067, *2 (Ohio App. 5 Dist.) . . . See, also, State v. Dean,140 Ohio App.3d 93 (2002); State v. White, 1998 WL 515944 (Ohio App.5 Dist) . . . Based on the authority of State v. Sherman, [the trial court] lacks jurisdiction to grant the State's discovery request." (Petitioner's Memorandum Contra to the State's Motion for an Order Declaring That Attorney-Client Privilege Has Been Waived and to Compel Testimony, filed Sept. 10, 2004 at 2).
 {¶ 26} In the case at bar, appellant's counsel has not cited any authority to support his claim, which appears to be that appellant, but not the State, is entitled to conduct discovery in the initial stages of the post-conviction petition.
 {¶ 27} Accordingly, the trial court did not err by refusing appellant the opportunity to conduct discovery prior to ruling on the State's motion for summary judgment.
 Preparation of Proposed Findings of Fact and Conclusions of Law {¶ 28} Appellant next contends that the trial court erred when it relied upon the proposed findings of fact and conclusions of law prepared by the State. We disagree.
 {¶ 29} Civ.R. 52 states that it is within the trial court's "discretion" to "require any or all of the parties to submit proposed findings of fact and conclusions of law."
 {¶ 30} In Anderson v. City of Bessemer (1985), 470 U.S. 564,105 S.Ct. 1504, the United States Supreme Court noted "[w]e, too, have criticized courts for their verbatim adoption of findings of fact prepared by prevailing parties, particularly when those findings have taken the form of conclusory statements unsupported by citation to the record. See, e.g., United States v. El Paso Natural Gas Co., 376 U.S. 651,656-657, 84 S.Ct. 1044, 1047-1048, 12 L.Ed.2d 12 (1964); United States v.Marine Bancorporation, 418 U.S. 602, 615, n. 13, 94 S.Ct. 2856, 2866, n. 13, 41 L.Ed.2d 978 (1974). We are also aware of the potential for overreaching and exaggeration on the part of attorneys preparing findings of fact when they have already been informed that the judge has decided in their favor. See J. Wright, The Nonjury Trial — Preparing Findings of Fact, Conclusions of Law, and Opinions, Seminars for Newly Appointed United States District Judges 159, 166 (1962). Nonetheless, our previous discussions of the subject suggest that even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous. United States v. MarineBancorporation, supra, at 615, n. 13, 94 S.Ct., at 2866, n. 13; UnitedStates v. El Paso Natural Gas Co., supra, 376 U.S., at 656-657,84 S.Ct., at 1047-1048". Id. at 572, 105 S.Ct. at 1510-11. This court has likewise held that this procedure is not prohibited. State v. Erwin
(April 8, 1998), 5th Dist. No. 97 CA32.
 {¶ 31} The trial court did not err in adopting the Findings of Fact and Conclusions of Law submitted by the State.
 Substantive Claims {¶ 32} The substance of appellant's claims on appeal focus upon his contention that trial counsel was ineffective.
 First Ground for Relief {¶ 33} In his First Claim for Relief, appellant contends that he was denied effective assistance of trial counsel as a result of trial counsel's failure to offer evidence at the penalty phase of his trial concerning the alleged "volatile relationship" between himself and the victim to show that he acted out of provocation, anger, and impulsivity. We disagree.
 {¶ 34} In support of this claim for relief appellant cites Exhibits A, B, C, J and L submitted in the trial court to support the petition. The trial court found with the exception of Exhibits A and B, the remaining exhibits are contained in the trial court record. (See, Discovery Record, Notice of Intent, Bill of Particulars State's Request for Discovery, filed Sept. 27, 2002).
 {¶ 35} In State v. Cole (1982), 2 Ohio St.3d 112, the Ohio Supreme Court stated: "[h]erein, as appellant, upon direct appeal, was represented by new counsel who was in no way enjoined from asserting the ineffectiveness of appellant's trial counsel and as such question of effective counsel could fairly be determined without examining evidence outside the record, none of the qualifications engrafted upon the Perry
decision is apposite. Moreover, to the extent paragraph two of the syllabus in State v. Hester, supra, precludes the application of the doctrine of res judicata to a claim which reasonably could have been raised upon direct appeal, said paragraph of the syllabus is hereby modified to comport with out [sic.] ruling of today". Id. at 113-14,443 N.E.2d at 171.
 {¶ 36} In the case at bar, appellant is represented in his direct appeal by new counsel. Counsel in that appeal can cite to the records contained in the court file to support a claim of ineffective assistance of trial counsel in failing to present evidence of the volatile relationship between appellant and the victim. Those records contain Exhibits C, J and L that were submitted in support of the petition in the lower court. To overcome the res judicata bar, the evidence must show that the petitioner could not have appealed the constitutional claim based on the information in the original trial record. Cole, syllabus. Appellant has failed in this burden. Exhibits A and B submitted in support of the petition in the trial court are mere media accounts which refer to the volatile relationship. These are merely cumulative and only marginally significant. See, State v. Watson (1998), 126 Ohio App.3d 316.
 {¶ 37} As appellant is able to raise and fully litigate this issue on direct appeal, this court concludes that the trial court did not err in finding that the issue was barred by res judicata.
 {¶ 38} Appellant's First Claim for Relief is overruled.
 Second and Tenth Grounds for Relief {¶ 39} In his Second Claim for Relief appellant maintains that trial counsel was ineffective because he offered the testimony of Dr. Jeff Smalldon who presented damaging testimony concerning appellant's turbulent history of incarceration, the victim's fear of appellant, and her reports of violence against her. Appellant further maintains that Dr. Smalldon is not a qualified mental retardation expert. In his Tenth Ground for Relief appellant claims that trial counsel was ineffective in failing to obtain the appointment of a mental retardation expert. We disagree.
 {¶ 40} In his First Ground for Relief, appellant argued that counsel was ineffective because he did not present evidence of the "volatile relationship" between himself and the victim to show that he acted out of provocation, anger, and impulsivity. Here, appellant is apparently arguing counsel was ineffective because he did in fact present evidence of that relationship. In any event, the substance of Dr. Smalldon's testimony is part of the trial court record. Accordingly, the factual and evidentiary basis for claiming Dr. Smalldon's testimony prejudiced appellant is capable of review without resort to evidence outside of the trial court record. (See, First Claim for Relief, supra).
 {¶ 41} Appellant has in fact raised this issue in his direct appeal pending in the Ohio Supreme Court. (See, State v. Elmore, Ohio Supreme Court No. 2004-0041, Appellants Brief's, filed June 21, 2004). As appellant is able to raise and fully litigate this issue on direct appeal, this court concludes that the trial court did not err in finding that the issue was barred by res judicata.
 {¶ 42} The second area alleged by appellant to constitute ineffective assistance of counsel is his contention that Dr. Smalldon is not an expert in mental retardation and the failure of his trial attorneys to present testimony from a qualified mental retardation expert.
 {¶ 43} In support of these claims appellant submits the affidavit of Dr. Timothy Rheinscheld. (Exhibit F). Dr. Rheinscheld averred that he "reviewed the testimony of Dr. Jeff Smalldon regarding his neuropsychological findings of [appellant]". (Id.). Dr. Rheinscheld opines that Dr. Smalldon "was unaware of the exact diagnostic criteria for MR [mental retardation]". (Id.).
 {¶ 44} Dr. Rheinscheld averred that there are three criteria necessary to diagnose mental retardation: "1). Significantly sub average intellectual functioning (70 or below) from a standardized measure of IQ; 2). Concomitant deficits in adaptive skills; and 3). Onset occurring during the developmental period which is defined as before the age of eighteen." (Id). Dr. Rheinscheld further averred that "[a]ccording to the DSM IV TR, an individual may have an IQ of 75 and still be considered to have mental retardation. This is due to the standard error of measurement (SEM) which is the difference between an observed score and an error free `true score'. The SEM is inherent in all psychological tests. The SEM from the WAIS III is 5 points. When considering the SEM and given [appellant's] IQ score of 72 obtained by Dr. Smalldon, this would meet the criteria of significantly sub average IQ . . ." (Id.). Dr. Rheinscheld concludes that appellant meets two out of the three criteria for mental retardation; however he can not make an assessment of whether appellant is mentally retarded without giving appellant an adaptive skills test. (Id.).
 {¶ 45} Dr. Rheinscheld's opinion that Dr. Smalldon is not aware of the diagnostic criteria for mental retardation is not supported by the record. It does not appear that Dr. Rheinscheld reviewed the October 29, 2003 letter from Dr. Smalldon to the Office of the Licking County Prosecutor. (Exhibit E). At page two of the letter Dr. Smalldon states: "[t]he defense does not plan to make a so-called Atkins claim in this case. In other words, there will be no suggestion that [appellant] is `mentally retarded.'" (Id.). Accordingly, it is apparent that Dr. Smalldon is referring to Atkins v. Virginia (2002), 536 U.S. 304,122 S.Ct. 2242, 153 L.Ed.2d 335. In Atkins, the United States Supreme Court held that executing a mentally retarded person violates the Eighth
Amendment's proscription against cruel and unusual punishment. On December 11, 2002, the Supreme Court of Ohio in State v. Lott,97 Ohio St.3d 303, 2002-Ohio-6625, 779 N.E.2d 1011, established procedures and substantive standards for adjudicating a death-eligible defendant's claim that he is, in the words of the United States Supreme Court in Atkins, "so impaired as to fall within the range of mentally retarded offenders" against whose execution there has emerged "a national consensus." See Atkins v. Virginia, 536 U.S. at 317, 122 S.Ct. 2242, 153.
 {¶ 46} The Supreme Court in Lott ruled that a defendant asserting anAtkins claim must prove by a preponderance of the evidence (1) that he suffers from "significantly subaverage intellectual functioning," (2) that he has experienced "significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction," and (3) that such manifestations of mental retardation arose "before the age of 18." State v. Lott, supra, 97 Ohio St.3d 303, 2002-Ohio-6625,779 N.E.2d 1011, at ¶ 12. This test is taken from the Atkins opinion.536 U.S. at 308, 122 S.Ct. at 2245.
 {¶ 47} Accordingly, it would appear that Dr. Smalldon is aware of the diagnostic criteria for mental retardation.
 {¶ 48} The Ohio Supreme Court in Lott held an IQ score above 70 gives rise to a rebuttable presumption that a defendant [is] not mentally retarded. Id. at ¶ 12, 18, and 21. Additionally "[w]hile the Lott Court acknowledged that the petitioner was raising the issue of the five-point margin of error in IQ testing, it did not adopt that standard but, rather, set forth the rebuttable presumption of mental retardation for above-seventy IQ scores". State v. Lorraine, 11th Dist. No. 2003-T-0159, 2005-Ohio-2529 at ¶ 38.
 {¶ 49} Dr. Rheinscheld does not dispute that appellant's IQ is above 70; rather he relies on the five-point margin of error which was not adopted by the Supreme Court in Lott. Without this five-point margin of error, appellant would not meet the first prong of the Atkins-Lott test. Accordingly, Dr. Rheinscheld's affidavit adds nothing new to the record and is based upon an assumption that, while it may be valid in the field of psychology, is not a valid factor in assessing mental retardation for an Atkins-Lott claim.
 {¶ 50} The fact that Dr. Smalldon informed the prosecutor in advance of trial that "[t]he defense does not plan to make a so-called Atkins claim in this case. In other words, there will be no suggestion that [appellant] is `mentally retarded'" indicates that the defense had investigated the possibility that appellant was mentally retarded for purposes of Atkins but realized such a claim could not be supported. Accordingly, counsel made a tactical decision not to pursue a claim that could not be supported, and instead chose to rely on brain impairment as a mitigation factor.
 {¶ 51} Accordingly, we find that the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. Calhoun, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).
 {¶ 52} Appellant's Second and Tenth Grounds for Relief are overruled.
 Third, Fourth, Twelfth and Thirteenth Grounds for Relief {¶ 53} In his Third, Fourth, Twelfth and Thirteenth Grounds for Relief appellant claims the grounds of ineffective assistance of counsel in failing to voir dire the jury on the issue of racial bias; failure to request individual sequestered voir dire on the issue of racial bias; that counsel was ineffective for failure to seek a change of venue to allow inclusion of an appropriate number of African-Americans in the jury pool; and that he was denied a fair trial due to the lack of African-Americans in the jury pool. We disagree.
 {¶ 54} Appellant has not claimed that the state failed to follow Ohio's statutory procedure for selecting jurors under R.C. Chapter 2313, or that said procedure itself intentionally or systematically excludes any cognizable group. Instead, appellant argues only that counsel was ineffective for not arguing that his venire did not represent a fair cross-section of the community because it did not include a sufficient number of blacks or other minorities.
 {¶ 55} The Sixth Amendment guarantee to a jury trial "contemplates a jury drawn from a fair cross section of the community." Taylor v.Louisiana (1975), 419 U.S. 522, 527, 95 S.Ct. 692, 696, 42 L.Ed.2d 690, 696. To establish a violation of this requirement, the "defendant must prove: (1) that the group alleged to be excluded is a `distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the representation is due to systematic exclusion of the group in the jury-selection process." State v. Fulton (1991), 57 Ohio St.3d 120, 566 N.E.2d 1195, paragraph two of the syllabus, citing Duren v. Missouri (1979),439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579, 586-587.
 {¶ 56} A criminal defendant has no affirmative right to a jury of a particular racial, gender or age composition. See United States v. Mack,159 F.3d 208 (6th Cir. 1998); see also Taylor v. Louisiana, 419 U.S. 522,538, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).
 {¶ 57} Moreover, appellant's systematic-exclusion claim is based solely on alleged under representation on his venire. But under representation on a single venire is not systematic exclusion. State v.McNeill (1998), 83 Ohio St.3d 438, 444, 700 N.E.2d 596. See, also Fordv. Seabold (C.A.6, 1988), 841 F.2d 677, 685. Cf. Duren, 439 U.S. at 366,99 S.Ct. at 669, 58 L.Ed.2d at 588 (discrepancy "not just occasionally, but in every weekly venire for a period of nearly a year" showed systematic exclusion). State v. McNeill (1998), 83 Ohio St.3d 438, 445,1998-Ohio-293, 700 N.E.2d 596, 604. Appellant's failure to point to any evidence supporting a prima facie violation of the fair cross-section requirement defeats this claim. See, e.g., United States v. Allen,160 F.3d 1096, 1103-04 (6th Cir. 1998) (finding no Sixth Amendment fair cross-section violation where defendants failed to meet second and third prongs of prima facie case).
 {¶ 58} The Ohio Supreme Court will normally defer to defense counsel's judgment in voir dire and not find ineffective assistance. State v.Clayton (1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 402 N.E.2d 1189.
 {¶ 59} "The conduct of voir dire by defense counsel does not have to take a particular form, nor do specific questions have to be asked."State v. Evans (1992), 63 Ohio St.3d 231, 247, 586 N.E.2d 1042, 1056. Moreover, as the Court noted in State v. Watson (1991), 61 Ohio St.3d 1,13, 572 N.E.2d 97, 108, under Turner v. Murray, the actual decision to voir dire on racial prejudice is a choice best left to a capital defendant's counsel. Id., 476 U.S. at 37, 106 S.Ct. at 1688,90 L.Ed.2d at 37, and fn. 10.
 {¶ 60} The Supreme Court has ruled that the mere fact that the defendant was black and the victim white is an insufficient basis, standing alone, to constitutionally require voir dire on racial bias.Ristaino v. Ross, 424 U.S. 589, 598, 96 S.Ct. 1017, 47 L.Ed.2d 258
(1976).
 {¶ 61} Appellant failed to present evidence outside of the record to make the necessary showing under Fulton, Seabold, Duren, and the other authorities mentioned to indicate deliberate exclusion of "distinctive groups" of the jury venire or jury panel involved. The statistical data and juror questionnaires do nothing to demonstrate intentional, systematic exclusion of minorities in the jury-selection process.
 {¶ 62} This was not a case of a racially motivated crime. Race was simply never an issue in appellant's case.
 {¶ 63} The trial court correctly denied appellant's petition for post conviction relief on the grounds of ineffective assistance of counsel in failing to voir dire the jury on the issue of racial bias and failure to request individual sequestered voir dire on the issue of racial bias without holding an evidentiary hearing because the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. Calhoun, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).
 {¶ 64} Appellant next contends that counsel was ineffective for failure to seek a change of venue to allow inclusion of an appropriate number of African-Americans in the jury pool and that he was denied a fair trial due to the lack of African-Americans in the jury pool. We disagree.
 {¶ 65} Initially, we note that appellant has failed to properly brief these issues on appeal. App.R. 16(A)(7) states that an appellant shall include in its brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contention, with citations to the authorities, statutes and parts of the record on which appellant relies." In this case, appellant has wholly failed to cite any specific place in the trial court's record where any of the errors are alleged to have occurred. Appellant has failed to separately argue the failure to request a change of venue and the denial of a fair trial anywhere within this assignment of error.
 {¶ 66} An appellate court is empowered to disregard an assignment of error presented for review due to lack of briefing by the party presenting that assignment. State v. Watson (1998), 126 Ohio App.3d, 316,710 N.E.2d 340, discretionary appeal disallowed in (1998),82 Ohio St.3d 1413, 694 N.E.2d 75, Hawley v. Ritley (1988),35 Ohio St.3d 157, 159, 519 N.E.2d 390, 392-393. "Errors not treated in the brief will be regarded as having been abandoned by the party who gave them birth." Uncapher v. Baltimore Ohio Rd. Co. (1933),127 Ohio St. 351, 356, 188 N.E. 553, 555.
 {¶ 67} Notwithstanding the appellant's failure to brief each issue we will address the merits of appellant's contentions.
 {¶ 68} A motion for change of venue is governed by Crim.R. 18(B), which provides, "Upon the motion of any party or upon its own motion the court may transfer an action * * * when it appears that a fair and impartial trial cannot be held in the court in which the action is pending. Any decision on a change of venue rests in the trial court's discretion. State v. Lynch, 98 Ohio St.3d 514, 2003-Ohio-2284,787 N.E.2d 1185, ¶ 34; State v. Landrum (1990), 53 Ohio St.3d 107,116-117, 559 N.E.2d 710.
 {¶ 69} As previously noted appellant failed to present evidence outside of the record to make the necessary showing under Fulton,Seabold, Duren, and the other authorities mentioned to indicate deliberate exclusion of "distinctive groups" of the jury venire or jury panel involved. The statistical data and juror questionnaires do nothing to demonstrate intentional, systematic exclusion of minorities in the jury-selection process.
 {¶ 70} Moreover, each impaneled juror confirmed that he or she had not formed an opinion about the guilt or innocence of the accused, or could put aside any opinion, and that he or she could render a fair and impartial verdict based on the law and evidence. State v. Treesh (2001),90 Ohio St.3d 460, 464, 739 N.E.2d 749, 759.
 {¶ 71} Accordingly, the trial court correctly denied appellant's petition for post conviction relief on the ground of failing to request a change of venue without holding an evidentiary hearing because the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. Calhoun,
86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).
 {¶ 72} To establish appellant's equal protection claim, the defendant must "adduc[e] statistical evidence which shows a significant discrepancy between the percentage of a certain class of people in the community and the percentage of that class on the jury venires, which evidence tends to show discriminatory purpose." Id. This evidence is then subject to rebuttal evidence suggesting that either no discriminatory purpose was involved or that such purpose had no "determinative effect." Id.; Duren,439 U.S. at 368, 99 S.Ct. at 670, 58 L.Ed.2d at 589, fn. 26. State v.Jones (2001), 91 Ohio St.3d 335, 340-41, 2001-Ohio-57, 744 N.E.2d 1163,1173. Importantly, "[t]he challenger must show under representation over a significant period of time [.]" State v. McNeill, 83 Ohio St.3d 438, 444,700 N.E.2d 596.
 {¶ 73} In the present matter, appellant did not attempt to demonstrate under representation over a significant period of time; consequently, this court concludes that the trial court did not err in determining that appellant failed to set forth sufficient operative facts establishing substantive grounds for relief on his equal protection claim.
 {¶ 74} Lastly, appellants' ineffective assistance of counsel claims based upon his trial counsel's failure to raise these issues before the trial court likewise lacks merit because appellant has failed to set forth sufficient operative facts to demonstrate prejudice resulting from his trial counsel's allegedly deficient representation. See Calhoun,86 Ohio St.3d at 289, 714 N.E.2d 905.
 {¶ 75} Appellant's Third, Fourth, Twelfth and thirteenth Assignments of Error are overruled.
 Fifth Claim for Relief {¶ 76} In his Fifth Claim for Relief appellant contends that trial counsel failed to adequately investigate, prepare and present evidence of how Rh incompatibility at birth affected him. We disagree.
 {¶ 77} The evidence outside the record submitted to the trial court to support this claim for relief consists of articles, apparently from the Internet, non-certified copies of appellant's medical records from at or around the time of his birth, and non-certified copies of medical records apparently of appellant's siblings.
 {¶ 78} "Prior to the promulgation of Evid.R. 706, effective July 1, 1998, rules governing the use of learned treatises evolved under the common law. In Hallworth v. Republic Steel Corp. (1950), 153 Ohio St. 349, 41 O.O. 341, 91 N.E.2d 690, paragraph two of the syllabus, the court held that learned treatises, even though properly identified, authenticated, and recognized as standard authority, are not admissible in evidence to prove the truth of the matter asserted therein. Rather, `learned treatises are considered hearsay, may not be used as substantive evidence, and are specifically limited to impeachment purposes only.'Ramage v. Cent. Ohio Emergency Serv. Inc. (1992), 64 Ohio St.3d 97, 110,592 N.E.2d 828, 838, citing Giannelli, Ohio Evidence Manual (1989), Section 702.06, Author's Comment; Piotrowski v. Corey Hosp. (1961),172 Ohio St. 61, 15 O.O.2d 126, 173 N.E.2d 355; Lambert v. Dally
(1972), 30 Ohio App.2d 36, 59 O.O.2d 29, 281 N.E.2d 857; andHallworth, supra". Freshwater v. Scheidt (1999), 86 Ohio St.3d 260, 267-68,1999-Ohio-161, 714 N.E.2d 891, 896. (Footnotes omitted). The Ohio Rules of Evidence do not change this result.
 {¶ 79} "The learned treatise exception to the hearsay rule set forth in Fed.Evid.R. 803(18) has no counterpart in Ohio Evid.R. 803. Ramage v.Cent. Ohio Emergency Serv., Inc. (1992), 64 Ohio St.3d 97, 110,592 N.E.2d 828, 838. As stated by this court in Hallworth v. RepublicSteel Corp. (1950), 153 Ohio St. 349, 354, 41 O.O. 341, 343,91 N.E.2d 690, 693:
 {¶ 80} `The great weight of authority holds that medical books or treatises, even though properly identified and authenticated and shown to be recognized as standard authorities on the subjects to which they relate, are not admissible in evidence to prove the truth of the statements therein contained. 20 American Jurisprudence, 816, Section 968; 65 A.L.R., 1102, annotation.'
 {¶ 81} "Moreover, in Piotrowski v. Corey Hosp. (1961), 172 Ohio St. 61,69, 15 O.O.2d 126, 130, 173 N.E.2d 355, 360, this court underscored the basis for the exclusion of such evidence:
 {¶ 82} "Such rule corresponds with the decided weight of authority which is to the effect that medical and other scientific treatises representing inductive reasoning are inadmissible as independent evidence of the theories and opinions therein expressed. The bases for exclusion are lack of certainty as to the validity of the opinions and conclusions set forth, the technical character of the language employed which is not understandable to the average person, the absence of an oath to substantiate the assertions made, the lack of opportunity to cross-examine the author, and the hearsay aspect of such matter'.
 {¶ 83} "Accordingly, in Ohio, a learned treatise may be used for impeachment purposes to demonstrate that an expert witness is either unaware of the text or unfamiliar with its contents. Moreover, the substance of the treatise may be employed only to impeach the credibility of an expert witness who has relied upon the treatise, Hallworth v.Republic Steel Corp., supra, 153 Ohio St. at 355-356, 41 O.O. at 343-344,91 N.E.2d at 694, or has acknowledged its authoritative nature". Stinsonv. England (1994), 69 Ohio St.3d 451, 457, 1994-Ohio-35, 633 N.E.2d 532,539.
 {¶ 84} In the case at bar, appellant has failed to make any showing that the articles submitted were properly identified and authenticated and shown to be recognized as standard authorities on the subjects to which they relate. "[E]vidence presented outside the record must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of Perry by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery." State v. Coleman (March 17, 1993), 1st Dist. No. C-900811, at 7; State v. Combs (1994), 100 Ohio App.3d 90, 98, 653 N.E.2d 205, 209.
 {¶ 85} Even if we were to consider the articles as admissible we would find that they are only marginally significant. The studies and the articles on Rh incompatibility, do not discuss any aspect of appellant or appellant's specific medical history. These exhibits, therefore, do not pass the minimum threshold of cogency required to raise a constitutional claim. See State v. Combs, supra. The magazine or Internet articles about cases in general or about another case are irrelevant to appellant's petition for post conviction relief. State v. Coleman, supra; State v.Combs, supra.
 {¶ 86} Likewise medical records of appellant or his siblings that merely indicate Rh incompatibility as of the 1950's with no indication as to how the condition presently affects the appellant are of marginal significance. "Evidence presented outside the record must meet some threshold standard of cogency' to advance the petitioner's claim beyond mere hypothesis." State v. Brown (Jan. 14, 2000), Lucas App. No.L-99-1251, quoting State v. Lawson (1995), 103 Ohio App.3d 307, 315,659 N.E.2d 362 (citation omitted).
 {¶ 87} Accordingly, trial court correctly denied appellant's petition for post conviction relief on the ground of failing to present mitigating evidence of how Rh incompatibility at appellant's birth affected him because the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. Calhoun, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).
 Sixth Ground for Relief {¶ 88} In his Sixth Ground for Relief appellant claims that his convictions and sentences are violable due to the trial court allowing excessive security measures to be used throughout the trial. Specifically, appellant was required to wear a stun belt on his arm throughout the jury trial. We disagree.
 {¶ 89} Initially we note that evidence offered de hors the record must be more than evidence which was in existence and available to the appellant at the time of the trial and which could and should have been submitted at trial if the appellant wished to make use of it. Simply put, the purpose of post conviction proceedings is not to afford one convicted of a crime a chance to retry his case.
 {¶ 90} Appellant does not present evidence outside the record that was unavailable to him at the time of trial. "Under the doctrine of resjudicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding [,] except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendantat the trial [that] resulted in that judgment of conviction or on an appeal from that judgment." (Emphasis sic.) State v. Perry (1967),10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104, paragraph nine of the syllabus. Thus, a common pleas court may apply the doctrine of res judicata to dismiss a post conviction claim, when the claim presents a matter that could fairly have been determined without resort to evidence dehors the record. Id.; State v. Cole (1982), 2 Ohio St.3d 112, 114, 2 OBR 661, 443 N.E.2d 169.
 {¶ 91} In appellant's case, the trial court's Judgment Entry denying appellant's motion to appear at all court proceedings without restraints was filed August 22, 2003. Accordingly, the claim presents a matter that could fairly have been determined without resort to evidence dehors the record.
 {¶ 92} As appellant is able to raise and fully litigate this issue on direct appeal, this court concludes that the trial court did not err in finding that the issue was barred by res judicata.
 {¶ 93} The trial court further found that appellant's claim and materials submitted outside the record lack substantive merit.
 {¶ 94} The decision to impose restraints upon a defendant in a criminal trial is left to the discretion of the trial court. Illinois v.Allen (1970), 397 U.S. 337, 343-44, 90 S.Ct. 1057, State v. Adams (2004),103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29. Although the trial court in the case at bar, did not hold a hearing on the use of the arm shocker this does not automatically result in a reversal: "[a]lthough we stress that the preferred and encouraged practice prior to handcuffing a defendant during any phase of trial is to hold a hearing on the matter, we do not find this to be an absolute rule. Where the facts and circumstances surrounding a defendant illustrate a compelling need to impose exceptional security procedures, the trial court's exercise of discretion in this regard should not be disturbed unless its actions are not supported by the evidence before it. Had the lower court in the case sub judice held a hearing on the matter, it would be much easier to review its decision to handcuff appellant and to place the deputies with him. Even though such a hearing did not take place, we find that the trial judge's actions did not amount to plain error". State v. Franklin
(2002), 97 Ohio St.3d 1, 19-20, 2002-Ohio-5304 at ¶ 82, 776 N.E.2d 26,47.
 {¶ 95} The evidence against appellant was overwhelming. Further the trial court noted that appellant is a flight risk and further that he has threatened deputies while incarcerated and awaiting trial in the instant case. (Judgment Entry, August 22, 2003). Appellant has submitted no evidence outside the record to establish the stun device was visible to the jury or that it distracted him from concentrating on his case. Had the lower court in the case sub judice held a hearing on the matter, it would be much easier to review its decision to utilize the arm shocker. Even though such a hearing did not take place, we find that the trial judge's actions did not amount error. We find no prejudice to appellant as a result of the use of the stun device at trial. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel.
 {¶ 96} Accordingly, we find the appellant has failed to sustain his burden of demonstrating that an error affected his substantial rights.United States v. Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; Statev. Perry (2004), 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646. We find no manifest miscarriage of justice occurred in this case. State v. Barnes
(2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quoting State v. Long
(1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118, 802 N.E.2d at 646.
 {¶ 97} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. Calhoun, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).
 {¶ 98} Accordingly, appellant's Sixth Claim for Relief is denied.
{¶ 99} Seventh Claim for Relief
 {¶ 100} In his Seventh Claim for Relief appellant contends that he was denied effective assistance of trial counsel because trial counsel failed to obtain the funds for, and secure the administration of a positron emission tomography scan (PET scan) of appellant's brain to assess the traumatic brain injury he suffered at the age of sixteen. We disagree.
 {¶ 101} Appellant argues that his expert Dr. Jeffrey Smalldon testified at trial concerning appellant's brain injury. (8T. at 1267-1268; 1286). Dr. Smalldon testified that a mild brain injury such as appellant's "can often result in clinically significant impairments". (Id. at 1268). However, appellant argues that on cross-examination the state assailed Dr. Smalldon for not being a medical doctor and being unqualified to diagnose medical conditions. (Id. At 1286). The state argued that Dr. Smalldon did not consult with a medical doctor, did not obtain a CAT scan and EKG or an MRI. (Id. at 1294-95). Appellant argues that this negative cross-examination would have been negated had trial counsel obtained the funds for the administration of a PET scan.
 {¶ 102} The evidence submitted outside the trial court record consists of non-certified medical records of appellant's injury from October, 1983, articles concerning the usefulness of PET scans in detecting brain injuries and the juror questionnaires. (Exhibits O, PP, QQ). The evidence submitted, as previously noted in relation to appellant's Fifth Claim for Relief, supra, are not admissible for the truth of the matters contained therein. Hallworth v. Republic Steel Corp. supra, 153 Ohio St. 349, 354,91 N.E.2d 690, 693.
 {¶ 103} Assuming arguendo the articles are admissible they do nothing to advance appellant's claim. Appellant does not present evidence outside the record that was unavailable to him at the time of trial. "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding [,] except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raisedby the defendant at the trial [that] resulted in that judgment of conviction or on an appeal from that judgment." (Emphasis sic.) State v.Perry (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104, paragraph nine of the syllabus.
 {¶ 104} The testimony of Dr. Smalldon is part of the trial court record. The cross-examination and closing argument, to which the appellant objects, are also part of the trial court record. Accordingly, this argument can be raised in appellant's direct appeal to the Ohio Supreme Court.
 {¶ 105} Appellant's Seventh Claim for Relief presents a matter that can fairly be determined without resort to evidence dehors the record. The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief.Calhoun, 86 Ohio St.3d at paragraph two of the syllabus; see R.C.2953.21(C).
 {¶ 106} As appellant is able to raise and fully litigate this issue on direct appeal, this court concludes that the trial court did not err in finding that the issue was barred by res judicata.
 {¶ 107} Appellant's Seventh Claim for Relief is overruled.
 Eight and Eleventh Claims for Relief. {¶ 108} In his Eight Claim for Relief appellant claims he was denied effective assistance of counsel because trial counsel failed to present an expert in African-American cultural mitigation. In his Eleventh Claim for Relief appellant maintains he was denied effective assistance of counsel because trial counsel failed to present an expert in the treatment of substance dependence, addictions behavior and addiction medicine in order to adequately prepare the defense case at the penalty phase of appellant's trial. We disagree.
 {¶ 109} In support of his claim that a cultural mitigation expert was necessary to effective assistance of counsel, appellant submits several records describing appellant's family and background. (Exhibits RR, TT and UU). However, appellant's expert, Dr. Jeffrey Smalldon, testified during the penalty phase of appellant's trial concerning appellant's background and family unit, referring to many of the same documents that appellant claims are outside the trial court record. (8T. at 1244-1248; 1250-1262). The remaining documents consist of an affidavit from an employee of the State Public Defender's Office which is simply the employee's recitation of what appellant's mother told her. (Exhibit SS). However, Dr. Smalldon testified with respect to appellant's mother that "[i]f the question is did I conclude after talking with Florence Elmore that she was a reliable informant about most things, the answer to that would definitely be no." (8T. at 1237). As this affidavit contains or relies upon hearsay, the trial court could give it little or no weight.State v. Calhoun (1999), 86 Ohio St.3d 279, 281, 714 N.E.2d 905.
 {¶ 110} The remaining documents submitted in support of appellant's Eighth Claim for Relief consist of testimony of cultural mitigation experts in other cases, unrelated to appellant's specific background and case, and articles concerning the usefulness of such experts. (Exhibit VV). As previously mentioned these documents are not admissible to prove the truth of the matters contained therein and are therefore only marginally relevant to appellant's petition.
 {¶ 111} Appellant does not present evidence outside the record that was unavailable to him at the time of trial. "Under the doctrine of resjudicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding [,] except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendantat the trial [that] resulted in that judgment of conviction or on an appeal from that judgment." (Emphasis sic.) State v. Perry (1967),10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104, paragraph nine of the syllabus.
 {¶ 112} In the case at bar, Dr. Smalldon's testimony sets forth the same facts as the Exhibits submitted by appellant.
 {¶ 113} As previously noted, the Ohio Supreme Court has stated that where a defendant, represented by different counsel on direct appeal, "fails to raise [in the direct appeal] the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence dehors the record, res judicata is a proper basis for dismissing defendant's petition for post conviction relief." State v.Cole (1982), 2 Ohio St.3d 112, 443 N.E.2d 169, syllabus; see, also,Lentz, 70 Ohio St.3d at 530, 639 N.E.2d 784; State v. Phillips, supra.
 {¶ 114} In State v. Phillips, supra, the court noted "Significantly, evidence outside the record alone will not guarantee the right to an evidentiary hearing. State v. Combs (1994), 100 Ohio App.3d 90, 97,652 N.E.2d 205. Such evidence "`must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of [Statev. Perry (1967), 10 Ohio St.2d 175] by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery.' "(Citation omitted.) State v. Lawson (1995),103 Ohio App.3d 307, 315, 659 N.E.2d 362. Thus, the evidence must not be merely cumulative of or alternative to evidence presented at trial.Combs, 100 Ohio App.3d at 98, 652 N.E.2d 205".
 {¶ 115} Appellant's trial counsel did present evidence during the mitigation phase as to abuse suffered by appellant and as to his family history. (8T. at 1244-1248; 1250-1262). "While it is true that cultural and mitigation experts may have been beneficial at the penalty phase of trial, defendant has failed to demonstrate that failure to present such resulted in unfair prejudice or deprived him of any constitutional right, including ineffective assistance of counsel. These claims are without merit". State v. Awkal (Nov. 15, 1998), 8th Dist. No. 73267 at 7.
 {¶ 116} We conclude that the evidence outside the record is only cumulative of the evidence that was presented to the jury. State v.Madrigal (Nov. 17, 2000), 6th Dist. No. L-00-1006 at 7. The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. Calhoun, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).
 {¶ 117} In support of his claim that he was denied effective assistance of counsel by counsel failure to present evidence relative to appellant's drug addiction, appellant submits a non-certified, incomplete page from a document which does not provide sufficient identifying information to establish that it is in fact referring to appellant. (Exhibit G). Accordingly, the trial could reject this document. State v.Calhoun (1999), 86 Ohio St.3d 279, 281, 714 N.E.2d 905
 {¶ 118} Appellant further submits an excerpt from the hearing on his motion to suppress, held in his case on December 20, 2002, police reports and narratives. (Exhibit CCC). This evidence was available to appellant and is part of the trial court record.
 {¶ 119} Exhibit DDD submitted by appellant is an excerpt from the Diagnostic and Statistical Manual of Mental Disorders. (DSM-IV-TR). This evidence was also available to appellant if he chose to use it.
 {¶ 120} Appellant is able to raise and fully litigate this issue on direct appeal, this court concludes that the trial court did not err in finding that the issue was barred by res judicata.
 {¶ 121} Nor did the trial court err in finding that this claims lacks substantive merit. Appellant's expert, Dr. Jeffrey Smalldon, has been qualified to testify as an expert in addiction and substance abuse in other cases. State v. LaMar (2002), 95 Ohio St.3d 181, 222. Thus, counsel readily had "alternative devices that would fulfill the same functions as the expert assistance sought." Jenkins, 15 Ohio St.3d 164, 473 N.E.2d 264, paragraph four of the syllabus. Furthermore, an attorney's selection of witnesses to call at trial falls within the purview of trial tactics and generally will not constitute ineffective assistance of counsel. See, e.g., State v. Coulter (1992), 75 Ohio App.3d 219. This Court will not second-guess every aspect of the defense attorney's presentation of the mitigation evidence at the penalty phase of the appellant's trial. It is well-settled that the existence of alternative or additional mitigation theories does not establish ineffective assistance of counsel. State v.Combs (1994), 100 Ohio App.3d 90, 105.
 {¶ 122} Appellant failed in his initial burden to submit evidentiary material containing sufficient operative facts that demonstrate a substantial violation of any of defense counsel's essential duties to his client and prejudice arising from counsel's ineffectiveness. Calhoun,86 Ohio St.3d at 289, 714 N.E.2d 905; State v. Jackson (1980),64 Ohio St.2d 107, 413 N.E.2d 819, syllabus; see, also Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, 693;State v. Phillips, supra.
 {¶ 123} Appellant has further failed to demonstrate that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Id.
 {¶ 124} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. Calhoun, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).
 {¶ 125} Accordingly, appellant's Eight and Eleventh Claims for Relief are overruled.
 Ninth Claim for Relief {¶ 126} In his Ninth Claim for Relief appellant claims trial counsel was ineffective because they failed to present testimony in the mitigation phase from two witnesses who would have testified that appellant behaved appropriately and seemed like a good guy while in a drug and alcohol program at the Salvation Army and that appellant expressed his remorse for the killing while incarcerated at the Licking County Jail. We disagree.
 {¶ 127} Appellant submitted the affidavit of Brian Hankins who was a resident at the Salvation Army and is now an employee at that institution. Mr. Hankins would have testified that appellant seemed like a good guy and caused no trouble at the Salvation Army. Mr. Hankins would also have testified as to his own experiences as a crack cocaine addict. (Exhibit YY).
 {¶ 128} The appellant also submitted the affidavit of Deborah German a nurse at the Licking County Jail. (Exhibit ZZ). Ms. German would have testified that appellant's medical needs were not being met while he was in jail, and further that appellant was unstable and remorseful.
 {¶ 129} An attorney's selection of witnesses to call at trial falls within the purview of trial tactics and generally will not constitute ineffective assistance of counsel. See, e.g., State v. Coulter (1992),75 Ohio App.3d 219. This Court will not second-guess every aspect of the defense attorney's presentation of the mitigation evidence at the penalty phase of the appellant's trial. It is well-settled that the existence of alternative or additional mitigation theories does not establish ineffective assistance of counsel. State v. Combs (1994),100 Ohio App.3d 90, 105.
 {¶ 130} In the case at bar, the State sought to introduce testimony that appellant had threatened to kill the victim prior to the date of the murder. (6T. at 999-1001; 10161-022). The trial court would not permit the introduction of that evidence at trial. (Id.). Further, in support of its Motion for Summary Judgment, the State submitted internal documents from the Licking County Jail to establish that appellant had been involved in fights at the jail and that he had threatened to kill other inmates as well as two of the deputies. (Respondent's Exhibit 5). The documents further indicate that appellant was charged with Aggravated Menacing as a result of his conduct at the jail. (Id.).
 {¶ 131} The decision not to call the jail nurse and Mr. Hankins may well have been a tactical decision. By presenting evidence of appellant's "good" character and his remorse while in the jail, counsel may have opened the door to evidence of appellant's fights and death threats to the victim, to the deputies and other inmates to counter his assertion that he was remorseful and a "good guy."
 {¶ 132} "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. See Strickland, 466 U.S., at 690,104 S.Ct. 2052 (counsel is `strongly presumed' to make decisions in the exercise of professional judgment). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. See Bell, supra, at 702, 122 S.Ct. 1843; Kimmelman v.Morrison, 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986);Strickland, supra, at 689, 104 S.Ct. 2052; United States v. Cronic,466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)". Yarborough v.Gentry (2003), 540 U.S. 1, 8, 124 S.Ct. 1, 6.
 {¶ 133} The Ohio Supreme Court has stated "[w]e will ordinarily refrain from second-guessing strategic decisions counsel make at trial, even where counsel's trial strategy was questionable. State v. Clayton
(1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 402 N.E.2d 1189." State v.Myers (2002), 97 Ohio St.3d 335, 362, 780 N.E.2d 186, 217.
 {¶ 134} Appellant failed in his initial burden to submit evidentiary material containing sufficient operative facts that demonstrate a substantial violation of any of defense counsel's essential duties to his client and prejudice arising from counsel's ineffectiveness. Calhoun,86 Ohio St.3d at 289, 714 N.E.2d 905; State v. Jackson (1980),64 Ohio St.2d 107, 413 N.E.2d 819, syllabus; see, also Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, 693;State v. Phillips, supra.
 {¶ 135} Appellant has further failed to demonstrate that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Id.
 {¶ 136} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. Calhoun, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).
 {¶ 137} Accordingly, appellant's Ninth Claim for Relief is overruled.
 Fourteenth Claim for Relief {¶ 138} In his Fourteenth Claim for Relief appellant contends that his convictions and sentences are void or voidable because they were obtained in violation of international law and treaties to which the United States is a signatory.
 {¶ 139} Appellant has submitted no affidavits or documentary evidence outside the trial court record to support this claim for relief. Further, appellant does not argue that evidence outside of the trial court record is necessary to a resolution of this issue.
 {¶ 140} "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding [,] except an appeal from that judgment, any defense or any claimed lack of due process that was raisedor could have been raised by the defendant at the trial [that] resulted in that judgment of conviction or on an appeal from that judgment." (Emphasis sic.) State v. Perry (1967), 10 Ohio St.2d 175, 39 O.O.2d 189,226 N.E.2d 104, paragraph nine of the syllabus.
 {¶ 141} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. Calhoun, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).
 {¶ 142} Accordingly, appellant's Fourteenth Claim for Relief is overruled.
 Fifteenth Claim for Relief {¶ 143} In his Fifteenth Claim for Relief appellant claims that that his convictions and sentences are void or voidable because Ohio's post-conviction procedures do not provide an adequate corrective process. We disagree.
 {¶ 144} Appellant has submitted no affidavits or documentary evidence outside the trial court record to support this claim for relief. Further, appellant does not argue that evidence outside of the trial court record is necessary to a resolution of this issue.
 {¶ 145} "We have previously held in a capital case that where the appellant does not go beyond mere conclusory allegations that the process is inadequate, the appellant has not demonstrated that post-conviction relief scheme is unconstitutional. State v. Gilliard (1998), Stark App. No. 1997CA00318, unreported. See, also, State v. Skelnar (1991)71 Ohio App.3d 444, 449, 594 N.E.2d 88 (R.C. 2953.21 is not unconstitutional); State v. Fox (May 16, 1997), Wood App. No. WD-96-031, unreported, (claim that post-conviction relief statute is inadequate, as relief is never granted, is not well taken).
 {¶ 146} "* * *
 {¶ 147} "Further, appellant has not demonstrated any prejudice by the court's failure to grant him discovery. Appellant submitted hundreds of pages in support of his petition for post-conviction relief. It does not appear that appellant's presentation of materials in support of his petition was hampered in any way by the court's failure to allow him to conduct discovery". State v. Ashworth (Nov. 8, 1999), 5th Dist. No. 99-CA-60; See also, Williams v. Bagley (6th Cir. 2004), 380 F.3d 932,967.
 {¶ 148} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. Calhoun, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).
 {¶ 149} Accordingly, appellant's Fifteenth Claim for Relief is overruled.
 Sixteenth Claim for Relief {¶ 150} In his Sixteenth Claim for Relief appellant challenges the Constitutionality of death by lethal injection.
 {¶ 151} Appellant has submitted no affidavits or documentary evidence outside the trial court record to support this claim for relief. Further, appellant does not argue that evidence outside of the trial court record is necessary to a resolution of this issue.
 {¶ 152} Accordingly, the claim presents a matter that could fairly have been determined without resort to evidence dehors the record.
 {¶ 153} As appellant is able to raise and fully litigate this issue on direct appeal, this court concludes that the trial court did not err in finding that the issue was barred by res judicata.
 {¶ 154} Appellant's Sixteenth Ground for Relief is overruled.
 Seventeenth and Eighteenth Claims for Relief {¶ 155} In his Seventeenth Claim for Relief appellant sought relief on the ground that the jury, in recommending the imposition of sentences of death, failed to understand and to follow the mitigation phase instructions. In support of this claim, he offered the affidavit of a linguistics professor who had analyzed the Ohio Jury Instructions pertaining to the death penalty, and the affidavit of an investigator for the defense who interviewed an alternative juror who did not participate in the deliberations at the guilt phase of the trial. (Exhibits FFF, GGG).
 {¶ 156} Evid.R. 606(B) governs the competency of a juror to testify: "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict * * * or concerning his mental processes in connection therewith. * * * His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes." Evid.R. 606(B) is subject to the exception embodied in the aliunde rule, which permits a juror to offer testimony impeaching his verdict upon the presentation of impeachment evidence from a competent source other than a juror. SeeState v. Kehn (1977), 50 Ohio St.2d 11, 18, 361 N.E.2d 1330, certiorari denied (1977), 434 U.S. 858, 98 S.Ct. 180, 54 L.Ed.2d 130; State v.Poindexter (Mar. 6, 1991), 1st Dist. No. C8-90734.
 {¶ 157} In the absence of evidence aliunde impeaching the jury's recommendations of sentences of death, Evid.R. 606(B) precluded consideration of the jurors' affidavits to show the effect upon the jurors' minds of the challenged instructions.
 {¶ 158} The affidavit of the investigator merely relays the jurors' statements. This evidence is also barred by Evid. R. 606. "In order to permit juror testimony to impeach the verdict, a foundation of extraneous, independent evidence must first be established. This foundation must consist of information from sources other than the jurors themselves, Wicker v. Cleveland (1948), 150 Ohio St. 434, 38 O.O. 299,83 N.E.2d 56, and the information must be from a source which possesses firsthand knowledge of the improper conduct . . . Similarly, where an attorney is told by a juror about another juror's possible misconduct, the attorney's testimony is incompetent and may not be received for the purposes of impeaching the verdict or for laying a foundation of evidencealiunde. See Tasin v. SIFCO Industries, Inc. (1990), 50 Ohio St.3d 102,553 N.E.2d 257; Dodd v. McCammon (1920), 14 Ohio App. 160, 32 Ohio C.C. (N.S.) 68". State v. Schiebel (1990), 55 Ohio St.3d 71, 75-76,564 N.E.2d 54, 61.
 {¶ 159} In Long v. Cassiero (1922), 105 Ohio St. 123, 136 N.E. 888, the Ohio Supreme Court stated "[i]f the erroneous verdict was brought about by the charge of the court, error should be predicated, not upon affidavits that the jury misunderstood the charge, but upon the ground that the charge was so misleading and prejudicial as to induce the erroneous verdict." Id. at 128. See also, Cleveland Elec. Ill. Co. v.Astorhurst Land Co. (1985), 18 Ohio St.3d 268, 274, 480 N.E.2d 794, 800.
 {¶ 160} The affidavit of the investigator is not competent evidence and therefore is not properly considered in appellant's petition. This leaves only the affidavit of the linguistic expert which is simply a non-certified photocopy culled apparently from some case unrelated to appellants.
 {¶ 161} The affidavit of the linguistics professor was signed and notarized September 7, 1994. (Exhibit GGG). As this was some nine (9) years prior to appellant's trial, this evidence was clearly available to appellant at the time of trial. What appellant seeks to do is supplement the record with documents to apparently avoid a waiver or plain error analysis on direct appeal because this issue was not raised in the trial court. The affidavit of the linguistics professor adds no new information. The question of whether the charge to the jury was so misleading and prejudicial as to induce an erroneous verdict was or could have been raised at trial or on direct appeal and is, therefore, properly the subject of the application of the doctrine of res judicata.
 {¶ 162} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. Calhoun, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).
 {¶ 163} Accordingly, appellant's Seventeenth and Eighteenth Claims for Relief are overruled.
 Nineteenth Ground for Relief {¶ 164} In his Nineteenth Ground for Relief appellant argues that the "cumulative errors" alleged in previous grounds collectively justify declaring his convictions and sentences void or voidable. We disagree.
 {¶ 165} In light of our disposition overruling appellant's previous claims and assignments of error there is no "cumulative error."
 {¶ 166} Appellant's Nineteenth Claim for Relief is overruled.
 {¶ 167} The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.
By Gwin, J., and Boggins, P.J., concur Edwards, J., concurs separately